IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASIA GENIUS INVESTMENT LIMITED,<br><br>   Petitioner,<br><br>  v.<br><br>BARIVEN, S.A. and PETROLEOS de VENEZUELA, S.A.,<br><br>   Respondents. | C.A. No. |

**DECLARATION OF ALEXANDRA SCHLUEP IN SUPPORT OF
PETITION TO CONFIRM ARBITRAL AWARD**

 Pursuant to 28 U.S.C. § 1746, Alexandra Schluep states as follows in support of the petition of Asia Genius Investment Limited ("**Asia Genius**") for an order pursuant to 9 U.S.C. § 207 confirming an arbitral award rendered in Asia Genius's favor against Bariven, S.A. ("**Bariven**"), a wholly owned subsidiary and *alter ego* of Petróleos de Venezuela, S.A. ("**PDVSA**") and entering judgment against Bariven and its *alter ego* PDVSA.

 1. My name is Alexandra Schluep. I am a lawyer qualified to practice in the Netherlands. I studied law at the University of Amsterdam graduating in 2002. I was admitted to practice in The Netherlands in 2002 and have practiced law continuously since that time.

2. I was one of the lawyers who represented Asia Genius in its arbitration against Bariven and am fluent in English and Dutch. I therefore make this declaration based on my own personal knowledge and by reference to business records of Asia Genius that I have personally reviewed.

3. Attached as **Exhibit A** is a true copy of the arbitral award issued in the arbitration *Asia Genius Investment Limited v. Bariven S.A.*, (ICC Case No. 25004/JPA/AJP (C-25005/JPA-25006/JPA-25007/JPA-25008/JPA-25009/JPA-25010/JPA-25011/JPA)) on March 20, 2023 (the "**Award**").

4. The claimant, Asia Genius, is a company incorporated under the laws of Hong Kong, and whose business entails the purchase, sale and distribution of goods, merchandise and equipment. *See* Award ¶ 2.

5. The respondent Bariven is a wholly owned subsidiary of the respondent PDVSA. Bariven has no independent business operations and effectively exists only to serve as PDVSA's purchasing department and agent.

6. In fact, PDVSA itself has conceded Bariven's status as an *alter ego*. In its 2011 management report, published by PDVSA with the intention that investors and others should rely upon it, PDVSA specifically describes Bariven as being "in charge of acquiring all necessary materials and equipment *for the Corporation's [i.e. PDVSA's] activities*." **Exhibit B** (emphasis added). Based on this, there can be no

meaningful doubt that Bariven functions as a department of, or (at a minimum) as an agent of, PDVSA.

7. The facts that gave rise to the dispute are thoroughly and accurately described in the Award itself but can be simply summarized: Bariven bought and accepted goods from Asia Genius on behalf of PDVSA, to their satisfaction, but Bariven never paid for most of them. *See* Award ¶¶ 98-99, 150, and 154.

8. The purchases were governed by agreements incorporated into nine purchase orders, each of which expressly incorporated the preceding request for quotation and the "Standard Terms & Conditions attached in the RFQ." The eight relevant requests for quotation are attached as **Exhibits C1—C8**, and the nine purchase orders are attached as **Exhibits C9—C17**.

9. The "Standard Terms & Conditions attached in the RFQ" contain an arbitration provision requiring arbitration in The Hague, The Netherlands, under the rules of the International Chamber of Commerce (the "**ICC Rules**"). *See, e.g.,* Ex. C1 § 27; Award ¶¶ 10, 81.

10. The substantive law of the underlying agreement is that of The Netherlands. *See* Exs. C1-C-8 §§ 25; Award ¶ 13.

11. Asia Genius duly commenced arbitration under the ICC Rules in 2019. *See* Award ¶ 15. Bariven did not make this easy. Asia Genius and the arbitral tribunal (the "**Tribunal**") provided notice to Bariven at the address given in the contract

documents of every material step in the proceedings. Despite its clear and unambiguous consent to arbitrate under the ICC Rules, Bariven refused or ignored service of documents pertaining to the arbitration and failed to appear in the arbitration. *See* Award ¶¶ 5, 15-78.

12.     The extensive account of the procedural steps taken, *see id.* ¶¶ 15-78, is in every way accurate based on my personal knowledge of the proceedings. At every step, Asia Genius and the Tribunal complied with the ICC Rules, which provide due process protections for non-appearing parties. There can be no doubt that, as the Tribunal concluded, Bariven was aware of, and simply decided not to participate in, the arbitration to which it agreed. *See id.* ¶ 152.

13.     It is worth noting that, as the Award describes, the Tribunal did not simply issue a default. Instead, consistent with the ICC Rules, the Tribunal examined Asia Genius's evidence and even propounded questions to Asia Genius (which Asia Genius answered) to satisfy itself as to the merits of Asia Genius' claim, *see* Award ¶ 153, before concluding that Asia Genius had made its case. *See* Award ¶ 154.

14.     Asia Genius received the Award on March 20, 2023. Unsurprisingly, Bariven has not satisfied the Award.

15.     Under Dutch arbitration law, proceedings to vacate an arbitral award must be commenced within three months from the date the final award is communicated to the parties. The award is deemed to have been sent under Dutch

11027755.v2                                         4

law if four weeks have elapsed after the date of the award. *See* Dutch Code of Civil Procedure Arts. 1058(2), 1064a(2), *available at* http://www.dutchcivillaw.com/civilprocedureleg.htm. Bariven has never sought to set aside the Award and the deadline to do so has long expired.

16. Dutch law provides for a statutory interest rate for claims relating to commercial transactions such as this from the day after the invoice should have been paid to the date of effective payment. The interest is compounded annually. *See* Award ¶ 103 and footnotes 39 and 68; Dutch Civil Code Art. 6:119a *available at* http://www.dutchcivillaw.com/civilcodebook066.htm. The Award accurately translates the Dutch Civil Code.

17. The interest rate is determined by "the refinancing interest as determined by the European Central Bank for its most recent basic refinancing transaction, taken place for the first calendar day of the concerning six-month period, multiplied with eight percent points." *See* Dutch Civil Code Art. 6:120, *available at* http://www.dutchcivillaw.com/civilcodebook066.htm.

18. The Tribunal ordered Bariven to pay Asia Genius the total outstanding principal amount due on each unpaid invoice. Award ¶ 188(iii). The Award accurately sets out the amounts due on each unpaid invoice and the dates on which the invoices were due. *See* Award ¶ 166. These are given in U.S. dollars and total US$ 49,670,681.14. *See* Award ¶ 188(iii).

19. The Tribunal ordered Bariven to pay Asia Genius pre-award statutory commercial interest (capitalized annually) on the outstanding principal in accordance with Article 6:119a of the DCC. *See* Award ¶ 188(iv). The statutory interest rates are published by the Dutch Central Bank. The Award based its calculation of pre-award interest on the publicly available tool for the calculation of statutory commercial interest found at http://www.wettelijke-rente.com/. *See* Award ¶ 167 n.88. Total interest through the date of the Award was US$ 56,780,663.80. *Id* ¶ 188(iv).

20. The Tribunal ordered Bariven to pay Asia Genius post-award statutory commercial interest (capitalized annually) on the principal and on the pre-award interest in accordance with Article 6:119a of the DCC, starting from one calendar day following the date of the Award, until the date of full and final payment. *See* Award ¶ 188(v).The applicable rates can be found on the website of the Dutch Central Bank: https://www.dnb.nl/en/statistics/data-search/#/details/statutory-interest-rate/dataset/2ed0b77d-72c5-47e8-8a3d-0c213048e11d/resource/b0304270-e4fb-41d5-bc2f-c7547a72fc0b.

21. The Award also awarded Asia Genius the costs and fees of the Arbitration arising out of Asia Genius' costs for legal representation in the amount of US$ 790,215.78 and € 36,000. Note that a portion of the legal fees was awarded in euros. *See* Award ¶ 188(vi).

22. The Tribunal ordered Bariven to pay the costs and fees of the Arbitration in respect of the fees and expenses of the ICC and the Tribunal in the amount of € 440,000. (Note that this amount is also in euros.) *See* Award ¶ 188(vii).

23. Finally, the Tribunal also ordered Bariven to pay statutory interest (capitalized annually) on the awards of costs and fees described in paragraphs 21-22, *supra,* in accordance with Article 6:119 of the DCC, starting from seven calendar days following the Award, until the date of full and final payment. *See* Award ¶ 188(viii).

24. I attach hereto as **Exhibit D** a table setting out the computation of the amount due as of December 9, 2024. For the conversion rate between euros and U.S. dollars, I used the applicable rate published by the Federal Reserve for the date of the Award. *See* Board of Governors of the Federal Reserve System, Foreign Exchange Rates – H.10 (Weekly), FED. RSRV. BD. (March 27, 2023), https://www.federalreserve.gov/releases/h10/20230327/.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 9, 2024.

_____
Alexandra Schluep