# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ASIA GENIUS INVESTMENT LIMITED,

Petitioner,

Case No. 1:24-cv-01379

v.

BARIVEN, S.A., and
PETRÓLEOS DE VENEZUELA, S.A.

Respondents.

_____/

## <u>CORRECTED OPENING BRIEF OF BARIVEN, S.A., AND PETRÓLEOS DE VENEZUELA, S.A. IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT</u>

**MARSHALL DENNEHEY, P.C.**

Aaron E. Moore, Esq. (#6739)
1 Righter Parkway, Suite 301
Wilmington, DE 19803
T: (302) 552-4367
E: AEMoore@mdwcg.com
*Counsel for Respondents, Bariven, S.A., and*
*Petróleos de Venezuela, S.A.*

DATED: July 9, 2026

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARDS ................................................................................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 4

ARGUMENT ................................................................................................................................... 7

    I.     Respondents Have Multiple Prima Facie Meritorious Defenses ...................................... 7

        a.   PDVSA Has Presumptive Immunity ..................................................................... 7

        b.   PDVSA Was Not a Party to the Underlying Arbitration ................................................. 9

        c.   Petitioner Has Failed to Establish Subject Matter and Personal Jurisdiction Over Both PDVSA and Bariven .................................................................................. 10

        d.   Neither PDVSA Nor Bariven Were Properly Served....................................................... 11

        e.   Respondents Have Other Meritorious Defenses............................................................. 14

    II.    Respondents' Failure to Respond Before Default Was Excusable .................................. 15

    III.    Lifting the Default Judgment Will Not Prejudice Petitioner ...................................... 19

    IV.    Default is an Extreme Sanction Not Warranted Here.................................................... 20

CONCLUSION.............................................................................................................................. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.T.N. Indus., Inc. v. Gross*,
   No. 4:14-CV-02743, 2016 WL 362309 (S.D. Tex. Jan. 29, 2016)......................................... 12

*Araya-Solorzano v. Nicaragua*,
   562 F. App'x 901 (11th Cir. 2014) ...................................................................................... 10

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989)............................................................................................................... 7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
   581 U.S. 170 (2017)............................................................................................................... 8

*Burke v. Smith*,
   252 F.3d 1260 (11th Cir. 2001) ........................................................................................... 10

*Butler v. Polk*,
   592 F.2d 1293 (5th Cir. 1979) ............................................................................................. 10

*CC/Devas (Mauritius) Limited v. Antrix Corp. Ltd.*,
   605 U.S. 223 (2025)............................................................................................................. 11

*Church-El v. Bank of New York,*
   No. CIV. 11-877 NLH/KMW, 2013 WL 1190013 (D. Del. Mar. 21, 2013)............................ 3

*Collex, Inc. v. Walsh*,
   74 F.R.D. 443 (E.D. Pa. 1977)............................................................................................. 17

*Emcasco Insurance Co. v. Sambrick*,
   834 F.2d 71 (3d Cir. 1987)............................................................................................. passim

*Farnese v. Bagnasco*,
   687 F.2d 761 (3d Cir. 1982)................................................................................................. 15

*Feliciano v. Reliant Tooling Co.*,
   691 F.2d 653 (3d Cir. 1982)................................................................................................. 19

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983).............................................................................................................. 8

ii

*FROF, Inc. v. Harris*,
  695 F. Supp. 827 (E.D. Pa. 1988) ....................................................................... 17

*Gold Kist, Inc. v. Laurinburg Oil Co.*,
  756 F.2d 14 (3d Cir. 1985).............................................................................. 3,14

*Gross v. Stereo Component Sys., Inc.*,
  700 F.2d 120 (3d Cir. 1983)................................................................................ 19

*Han Kim v. Democratic People's Republic of Korea*,
  774 F. 3d 1044 (D.C. Cir. 2014) ........................................................................... 8

*Heleasco Seventeen, Inc. v. Drake*,
  102 F.R.D. 909 (D. Del. 1984) ............................................................................ 17

*Hritz v. Woma Corp.*,
  732 F. 2d 1178 (3d Cir. 1984)............................................................................. 16

*In re Doe*,
  681 F. App'x 106 (3d Cir. 2017) ........................................................................... 3

*Int'l Bhd. of Elec. Workers, Loc. Union No. 313 v. Skaggs*,
  130 F.R.D. 526 (D. Del. 1990) ............................................................................. 3

*Jackson v. FIE Corp.*,
  302 F.3d 515 (5th Cir. 2002) .............................................................................. 14

*Jackson-Platts v. Gen. Elec. Cap. Corp.*,
  727 F.3d 1127 (11th Cir. 2013) ............................................................................ 9

*Lightfoot v. United States*,
  564 F.3d 625, 627 (3d Cir. 2009)........................................................................ 10

*Magness v. Russian Federation*,
  247 F.3d 609 (5th Cir. 2001) .............................................................................. 12

*McCrae v. KLLM Inc.*,
  89 F. App'x 361 (3d Cir. 2004) ...................................................................... 16, 20

*Medunic v. Lederer*,
  533 F.2d 891 (3d Cir. 1976)................................................................................ 20

*N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., Inc.*,
  No. 09-718 (PGS), 2010 WL 1706961 (D. N.J. Apr. 27, 2020)............................... 9

*Newland Moran Real Estate v. Green Cay Prop., Inc.*,
   41 F. Supp. 2d 576 (D.V.I. 1999) ...................................................................... 19

*Peacock v. Thomas*,
   516 U.S. 349 (1996) .................................................................................... 9, 10

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) ........................................................................................ 19

*Plastics Eur. v. Bolivarian Republic of Venezuela*,
   23 F. 4th 1036 (D.C. Cir. 2022) ...................................................................... 13

*Poulis v. State Farm Fire & Cas. Co.*,
   747 F.2d 863 (3d Cir. 1984) ............................................................................ 20

 *Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Ass'n*
   819 F. 2d 434, 437 (3d Cir. 1987)……………………………………………..10

*Republic of Sudan v. Harrison*,
   587 U.S. 1 (2019) ......................................................................................... 4, 14

*SEC v. Lahr*,
   2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024) ............................... 3, 14

*Strabal v. Zhang*,
   318 F.R.D. 81 (N.D. Ill. 2016) ........................................................................ 14

*United States v. $55,518.05 in U.S. Currency*,
   728 F.2d 192 (3d Cir. 1984) .............................................................................. 3

*United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*,
   363 U.S. 574 (1960) .......................................................................................... 9

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) .......................................................................................... 3

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ........................................................................................ 12

*Water Splash, Inc. v. Menon*,
   581 U.S. 271 (2017) ........................................................................................ 13

**Statutes**

28 U.S.C. § 1603(a), (b) .................................................................................... 11

28 U.S.C. § 1608(b) .................................................................................... 11, 12

28 U.S.C. § 1330(b) ................................................................................................................... 14

28 U.S.C. § 1391(f)(3) ............................................................................................................... 14

28 U.S.C. § 1603(b) ..................................................................................................................... 8

28 U.S.C. § 1604 ....................................................................................................................... 7, 8

28 U.S.C. § 1608 ............................................................................................................... 6, 11, 12

28 U.S.C. § 1608(e) ................................................................................................................ 2, 8, 9

28 U.S.C. §§ 1602–1611 ............................................................................................................ 1, 7

## Rules

Fed. R. Civ. P. 4(j)(1) and (f)(1) ............................................................................................. 11,13

Fed. R. Civ. P. 60(b)(4) ............................................................................................................. 3, 20

Fed. R. Civ. P. 60(b), (c) ............................................................................................................... 3

Fed. R. Civ. P. 4(h)(2) and (f)(1) ................................................................................................. 12

Fed. R. Civ. P. 55(c) and 60(b) ................................................................................................. 1, 20

## Other Authorities

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   330 U.N.T.S. 3; 21 U.S.T. 2517 June 10, 1958 (New York Convention) ................................ 15

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
   Commercial Matters 20 U.S.T. 361, Nov. 15, 1965 ("Hague Convention") ................ 12, 13, 15

Respondents Petróleos de Venezuela, S.A. ("PDVSA") and Bariven, S.A. ("Bariven") (collectively, "Respondents"), by and through their undersigned counsel, respectfully move this Court pursuant to Federal Rules of Civil Procedure 55(c) and 60(b) for an order vacating the default judgment entered on June 25, 2026 (D.I. 20). As set forth below, Respondents satisfy each of the four factors governing vacatur under *Emcasco Insurance Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987): Respondents possess multiple prima facie meritorious defenses; Petitioner will suffer no cognizable prejudice from vacatur; Respondents' failure to appear was the product of extraordinary circumstances constituting excusable neglect rather than culpable conduct; and the extreme sanction of default is inappropriate under the circumstances.

## INTRODUCTION

Respondent PDVSA is Venezuela's national oil company and a foreign sovereign presumptively immune from the jurisdiction of United States courts under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611. Bariven is a Venezuelan state-owned procurement subsidiary of PDVSA. In 2019, Petitioner Asia Genius Investment Limited ("Asia Genius" or "Petitioner"), a Hong Kong company, commenced arbitration in The Hague against Bariven related to a dispute over oil equipment purchase orders dating from 2012-2014 (D.I. 4 ¶ 11). Petitioner concedes that Bariven never appeared in the arbitration. Indeed, the record establishes that Bariven was never properly served with the Requests for Arbitration and the ICC itself acknowledged that service at the agent's address failed because "the shipment was not delivered as the address is wrong." Award ¶¶ 17, 19. Yet, in Bariven's absence, the ICC awarded Petitioner more than one hundred million dollars (the "Award"). *Id.* at ¶¶ 18-19, 21. PDVSA was not a party to the arbitration, was not named in the Award, and was not found liable in any capacity.

1

On December 16, 2024, Petitioner filed a Petition to Confirm Arbitral Award (the "Petition") (D.I. 1), naming not only Bariven as a respondent but also PDVSA, which was not a party to the arbitration, did not appear in the arbitral proceedings, and was not found jointly or severally liable in the Award. Petitioner's sole basis for naming PDVSA is a conclusory "alter ego" theory supported by nothing more than a single sentence from a 2011 management report. D.I. 1 ¶ 9. On June 5, 2026, Petitioner filed a Motion for Entry of Default Judgment (D.I. 18), which likewise fails to satisfy the heightened evidentiary standard of 28 U.S.C. § 1608(e), relying entirely on the Petition's conclusory allegations and offering no competent evidence establishing an exception to PDVSA's sovereign immunity or personal jurisdiction over either Respondent.

Respondents first learned of this action following entry of the Clerk's Default on April 22, 2026. In the intervening weeks, Respondents have acted with all diligence to retain counsel, investigate the procedural history, and prepare this filing, all in the face of one of the most tumultuous periods of recent Venezuelan history, including a change in administration, new United States recognition of the head of state, formal court recognition that undersigned counsel has authority to represent Venezuelan state-owned entities such as Respondents, and, most recently, the most devastating earthquake in modern Venezuelan history.

As detailed below, Respondents have multiple prima facie meritorious defenses, including PDVSA's sovereign immunity, PDVSA's status as a non-party to the underlying arbitration, lack of subject-matter and personal jurisdiction as to both Respondents, and deficient service of process under both the FSIA and the Hague Convention. Petitioner cannot demonstrate any cognizable prejudice from vacatur, and Respondents' delay is excusable. Default – always highly disfavored – is particularly inappropriate here and should be lifted.

## LEGAL STANDARDS

"The Third Circuit does not favor the entry of defaults or default judgments preferring instead that cases be decided on their merits." *Int'l Bhd. of Elec. Workers, Loc. Union No. 313 v. Skaggs*, 130 F.R.D. 526, 528 (D. Del. 1990). Therefore, "the law requires doubtful cases to be resolved in favor of the party moving to set aside the default judgment." *Church-El v. Bank of New York, No.* CIV. 11-877 NLH/KMW, 2013 WL 1190013, at \*3 (D. Del. Mar. 21, 2013) (cleaned up); *accord United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (requiring courts to avoid default judgment in doubtful cases).

A defendant may move to vacate a default judgment within a "reasonable time" after its entry. Fed. R. Civ. P. 60(b), (c). Under Rule 60(b)(1), relief lies where the judgment was a product of "mistake, inadvertence, surprise, or excusable neglect." *In re Doe*, 681 F. App'x 106, 109 (3d Cir. 2017); *$55,518.05 in U.S. Currency*, 728 F.2d at 194. In evaluating whether to vacate defaults, courts consider: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

Where, as here, there is a jurisdictional defect, such as lack of proper service or personal jurisdiction, the judgment is void and must be vacated without regard to the *Emcasco* factors. *See SEC v. Lahr*, 2024 U.S. App. LEXIS 18170, at \*9–10 (3d Cir. July 24, 2024) (ordering vacatur of entry of default and default judgment where service was not properly made under the Hague Convention); *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside."); *see also* Fed. R. Civ. P. 60(b)(4); *United Student Aid Funds, Inc. v. Espinosa*,

3

559 U.S. 260, 270 (2010). A court is powerless to enter a default judgment unless it has personal jurisdiction over the defaulting party. *See Republic of Sudan v. Harrison*, 587 U.S. 1, 9–10 (2019) (reversing default judgment for failure to comply strictly with FSIA service provisions). As set forth below, the judgment here is void for lack of proper service and jurisdiction but, even if the judgment was not void, Respondents independently satisfy all four *Emcasco* factors.

## FACTUAL AND PROCEDURAL BACKGROUND

Between 2012 and 2014, Bariven – through its Dutch agent, PDVSA Services B.V. ("PDVSA Services")[1] – issued nine purchase orders to Asia Genius for industrial equipment. *See generally* the Award, D.I. 4, Ex. A. The purchase orders contained an ICC arbitration clause providing that disputes between the parties must be resolved through arbitration in The Hague, and a choice-of-law clause selecting Dutch law as the governing law. Award ¶¶ 4-7, 10-13, and 80.

On December 23, 2019, Asia Genius filed eight Requests for Arbitration with the ICC. The ICC acknowledges that Bariven did not appear in the arbitral proceedings and was not represented by counsel. Award ¶ 5. Asia Genius's deficient service attempts on Bariven are enumerated in detail in the Award itself. Award ¶ 5. Nevertheless, the ICC deemed service sufficient on February 10, 2020, when Asia Genius sent its Requests for Arbitration to Bariven's Dutch agent's last known address. Award ¶ 19. The ICC made this decision despite recognizing that "no Answer has been received to date" because service on Bariven's agent "in the Netherlands failed since '*the shipment was not delivered as the address is wrong*.'" *Id.* at ¶¶ 17.

---

[1] PDVSA Services B.V. is a Dutch corporation that served as the purchasing agent for Bariven, S.A. It is a separate legal entity from Respondent Petróleos de Venezuela, S.A. ("PDVSA"), Venezuela's state-owned national oil company. Each purchase order expressly states that it was "issued by PDVSA Services, BV on behalf of, and for the account of BARIVEN, S.A.," and the Tribunal confirmed that the contractual counterparty was Bariven, not PDVSA Services. Award ¶¶ 4, 84, 110. PDVSA itself also was not a party to the purchase orders, the Terms and Conditions, or the arbitration, and is not mentioned in the operative portion of the Award.

4

Proceeding without Bariven, the Tribunal issued a Final Award on March 20, 2023, ordering payment of USD 49,670,681.14 in principal and USD 56,780,663.80 in pre-award statutory interest and costs for a total award north of one hundred million dollars. Award ¶ 188.

PDVSA was not a party, a respondent, or an addressee of the Award in any capacity. Award at ¶¶ 1-188. Respondent did not attempt to bring PDVSA in as a defendant, and PDVSA was not found jointly and severally liable. *Id.* The Award is captioned "ASIA GENIUS INVESTMENT LIMITED ... CLAIMANT ... And ... BARIVEN S.A. ... RESPONDENT." Award at 1. Every operative paragraph of the Tribunal's Decision orders Bariven – and only Bariven – to pay. Award ¶ 188. The Tribunal explicitly confirmed that the contractual counterparty was Bariven, not PDVSA or even PDVSA Services. Award ¶ 84. There is no alter ego finding, no veil-piercing analysis, and no joint-and-several liability determination anywhere in the Award.

On December 16, 2024, Asia Genius filed its Petition in this Court seeking to confirm the Award against Bariven and PDVSA (D.I. 1). Despite PDVSA not being a party to the arbitration, Asia Genius claims that execution against PDVSA is appropriate because PDVSA is allegedly an "alter ego" of Bariven. This theory is based on a single sentence in a 2011 PDVSA management report describing Bariven's procurement function as being "in charge of acquiring all necessary materials and equipment *for the Corporation's [i.e., PDVSA's] activities*." D.I. 1 ¶ 9. (quoting Ex. B) (emphasis added by Petitioner). For that insufficient reason, Asia Genius, an entity of Hong Kong, brought this action in Delaware to execute a Dutch arbitral award against two Venezuelan parties, one of which owns shares of a Delaware corporation.

Over seven (7) months later, on July 17, 2025, the Court issued Letters Rogatory at Petitioner's request. (D.I. 5-13). On December 23, 2025, the Department of State delivered the Letter Rogatory to the "Presidential Commissioner for Foreign Relations of the Bolivarian

5

Republic of Venezuela…" D.I. 14.[2] The Department of State could not serve the Letters Rogatory

in Venezuela "[b]ecause the United States Embassy operations in Venezuela are currently

suspended." *Id.* As a result, the Department of State was careful to qualify its notice regarding the

Letters Rogatory:

> performance by the Department of State of its statutory functions under 28 U.S.C.
> § 1608 should not be construed as an indication in any way of the United States'
> position or views on whether plaintiffs have properly complied with all statutory
> requirements of the FSIA, the status or character of a defendant, whether service
> was properly effected, or the merits of any claims or defenses.

*Id.*

On January 2-3, 2026, the United States arrested Nicolás Maduro in Caracas, Venezuela,

and detained him pending federal criminal charges in the Southern District of New York. Then-

Vice-President Delcy Rodriguez became acting President of Venezuela thereafter.

On or before March 11, 2026, the United States formally recognized "Delcy Rodriguez as

the sole Head of State, able to take action on behalf of Venezuela." *See Stansell et al. v. FARC et

al.*, Case No. 1:16-mc-00405-LGS-SN, ECF 621 (March 11, 2026, S.D.N.Y).

On April 17, 2026, Petitioner sought a Clerk's Default and on April 22, 2026, the Clerk

entered a Clerk's Default. D.I. 15, 16.

On May 15, 2026, courts recognized undersigned *pro hac vice* counsel as having "been

designated as permanent counsel … for the … Venezuelan state-owned entities." *See Stansell et

al. v. FARC et al.*, Case No. 1:16-mc-00405-LGS-SN, ECF 632 (May 15, 2026, S.D.N.Y).

---

[2] The Department of State did not detail who, if anyone, actually filled this post. D.I. 14. In fact, the "interim government" that established the post had been dissolved years earlier. See Washington Post, "Venezuela's opposition dissolves Guaidó-led 'interim government,'" published December 29, 2022, updated December 30, 2022, at: (https://www.washingtonpost.com/world/2022/12/29/guaido-venezuela-opposition-ouster/).

On May 28, 2026, following Respondents learning of the Clerk's Default in this action, undersigned Delaware counsel first entered their appearance for Respondents in this action. ECF 17. On June 10, 2026, Respondents' counsel attempted to confer in good faith with Petitioner's counsel regarding whether they would consent to or oppose a motion to vacate the Clerk's Default. *See* June 10, 2026, email attached hereto as Exhibit "A." On June 16, 2026, Petitioner's counsel responded to the effort to meet and confer for the first time, stating: "We are working on responding to this request but are delayed due to vacation schedules. I hope to have a response this week.  Thank you for your patience." *See* June 16, 2026, email attached hereto as Exhibit "B."

On June 25, 2026, while Respondents were still awaiting Petitioner's counsels' position on a motion to vacate the Clerk's Default, the Court entered the Default Judgment at D.I. 20. This motion follows.

<u>**ARGUMENT**</u>

### I.      <u>Respondents Have Multiple Prima Facie Meritorious Defenses</u>

#### a.  **PDVSA Has Presumptive Immunity**

PDVSA, wholly owned by Venezuela, a foreign sovereign, is presumptively immune from the jurisdiction of United States courts under the FSIA, 28 U.S.C. §§ 1602–1611, and considered a "foreign state" for immunity purposes.

The Supreme Court has repeatedly recognized that the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (abrogated on other grounds by *Exxon Mobil Corp. v. Corporacion Cimex, S.A. (Cuba)*, No. 24–699 (U.S. June 23, 2026)). A foreign state is presumptively immune from such jurisdiction unless it is shown that an exception to immunity exists. 28 U.S.C. § 1604. A "foreign state" includes "an agency or instrumentality of a

7

foreign state." 28 U.S.C. § 1603(b). Thus, under the FSIA, PDVSA is presumptively "immune from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, unless Asia Genius "show[s] (and not just arguably show[s])" that one of the enumerated exceptions to sovereign immunity in §§ 1605-07 applies. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017).

The FSIA also provides the exclusive procedures for entering a default judgment against a foreign state or its agency or instrumentality. Specifically, § 1608(e) provides:

> No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief *by evidence* satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

28 U.S.C. § 1608(e) [emphasis supplied]. To satisfy § 1608(e)'s stringent requirements, a plaintiff must prove its claim, including the court's subject-matter jurisdiction, by "compelling, admissible evidence." *Han Kim v. Democratic People's Republic of Korea*, 774 F. 3d 1044, 1049 (D.C. Cir. 2014).

Nowhere in the Petition or the Motion for Default Judgment does Asia Genius purport to allege, much less establish by "compelling, admissible evidence," that an enumerated exception under the FSIA abrogates PDVSA's sovereign immunity. The Petition attempts to rely on the arbitration exception but offers only conclusory allegations that PDVSA is Bariven's "alter ego" and "has property in this district." D.I. 1 ¶¶ 9–11. The Motion for Default Judgment merely incorporates these insufficient allegations by reference. D.I. 18 ¶¶ 22, 29. Furthermore, an alter ego theory is not an enumerated exception to immunity under §§ 1605–1607; it is a veil-piercing theory of attribution that presupposes jurisdiction already exists. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983). ("Duly created instrumentalities

8

of a foreign state are to be accorded a presumption of independent status."). Because Petitioner failed to establish any FSIA exception by competent evidence as required by § 1608(e), the default judgment against PDVSA is void. At a bare minimum, PDVSA has demonstrated a prima facie meritorious jurisdictional defense warranting vacatur under *Emcasco*.

### b.  PDVSA Was Not a Party to the Underlying Arbitration

PDVSA was never a party to the underlying arbitration and therefore has a "prima facie meritorious defense" requiring vacatur of a default.  *N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., Inc.*, No. 09-718 (PGS), 2010 WL 1706961, at *6 (D. N.J. Apr. 27, 2020) (holding that a non-signatory to the underlying collective bargaining agreement asserted a prima facie meritorious defense supporting vacatur of the default judgment confirming the arbitration award and vacating both the judgment and the award). Binding PDVSA to a judgment flowing from an arbitration to which it was not a party also runs afoul of the fundamental premise that "a party cannot be required to submit to arbitration any dispute which he has not agree[d] to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigator Co.,* 363 U.S. 574, 582 (1960); *Heartland Dev. Co., Inc.*, 2010 WL 1706961, at *6. Indeed, Asia Genius's theory against PDVSA rests entirely on its *post hoc* (and erroneous) allegation that PDVSA is the "alter ego" of Bariven, a theory itself not based on any competent evidence.

Petitioner's "alter ego" theory is "a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the [arbitration] case.*"* *Peacock v. Thomas*, 516 U.S. 349, 359 (1996) (holding court lacked ancillary jurisdiction over effort to enforce judgment against third party based on alleged civil conspiracy and fraudulent transfer of judgment-debtor's assets); *accord Jackson-Platts v. Gen. Elec. Cap. Corp*., 727 F.3d 1127, 1134 (11th Cir. 2013) ("Under our settled precedent, actions are not ancillary and are instead

9

independent civil actions when they are 'in effect suits involving a new party litigating the existence of a new liability.'" (quoting *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir. 1979)). Petitioner was thus required to initiate a new civil action and establish this Court's subject-matter and personal jurisdiction for its claim against PDVSA. *See Peacock*, 516 U.S. at 355 (holding that "subsequent lawsuit" based on existing federal judgment must have "independent basis for jurisdiction."). Petitioner did not do so. As a result, Petitioner never alleged, much less established, this Court's subject-matter jurisdiction. *See Peacock*, 516 U.S. at 355. Because Petitioner failed to initiate a new action and establish jurisdiction over PDVSA, the default judgment is void and must be vacated. *See Araya-Solorzano v. Nicaragua*, 562 F. App'x 901, 903 n.2 (11th Cir. 2014) (*per curiam*) (affirming vacatur of default judgment because "[t]here is no question that a judgment is void if the court lacked subject-matter jurisdiction" (quoting *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001))).

### c. Petitioner Has Failed to Establish Subject Matter and Personal Jurisdiction Over Both PDVSA and Bariven

Petitioners bear the burden of establishing both subject-matter and personal jurisdiction over Respondents. *See Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009); *Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 437 (3d Cir. 1987). As to PDVSA, Petitioner must first establish with credible, competent evidence that a FSIA exception to PDVSA's immunity applies and must bring a separate action establishing subject-matter jurisdiction. *See Peacock*, 516 U.S. at 355. Petitioner has not done so; the Motion for Default Judgment merely incorporates the Petition by reference and declares, without evidentiary support, that subject-matter jurisdiction exists because the Award "falls within the scope of the New York Convention." D.I. 18 ¶¶ 22–24. But the New York Convention provides a basis for confirming an

10

award against a *party to the arbitration* — not against a non-party sovereign instrumentality that Petitioner seeks to bind through an unproven alter ego theory.

As to Bariven, Petitioner must also establish subject-matter and personal jurisdiction. Yet neither Bariven nor the transactions at issue in the underlying arbitration have any connection to this jurisdiction. Petitioner is a Hong Kong company. PDVSA is a Venezuelan company wholly owned by the sovereign state of Venezuela. Bariven is a wholly owned subsidiary of PDVSA. PDVSA Services B.V., the servicing company Bariven used in connection with the underlying transactions, is a Netherlands corporation. The underlying purchase orders involved the shipment of oil industry supplies from Asia to Venezuela. Nothing about this case touches Delaware, or even the United States, in any way, except Petitioner's effort to attach assets of an unrelated PDVSA subsidiary that happens to own a Delaware corporation. The Motion for Default Judgment claims the Court has personal jurisdiction based solely on the Supreme Court's decision in *CC/Devas (Mauritius) Limited v. Antrix Corp. Ltd.*, 605 U.S. 223 (2025), which held that minimum contacts are not required under the FSIA. D.I. 18 ¶¶ 30–31. But *CC/Devas* addressed jurisdiction over a foreign state that was *properly served* under the FSIA – a predicate that Petitioner has not satisfied here, as discussed below. There are no contacts between this dispute, its parties, and this jurisdiction, and Respondents have prima facie meritorious subject-matter and personal jurisdiction defenses.

### d.  Neither PDVSA Nor Bariven Were Properly Served

PDVSA and Bariven further have meritorious defenses based on insufficient service of process. PDVSA is an "agency or instrumentality" of Venezuela and considered a foreign state within the meaning of FSIA, *see* 28 U.S.C. 1603(a), (b). Under the FSIA, agencies and instrumentalities of foreign states must be served with process under the exclusive, hierarchical

11

methods prescribed in 28 U.S.C. §1608(b). *See* Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608."). Section 1608(b) sets out a three-tiered preferential hierarchy for service on an agency or instrumentality of a foreign state. *Magness v. Russian Federation*, 247 F.3d 609 (5th Cir. 2001) (holding "[t]he provisions for service under section 1608 are hierarchical, such that a plaintiff must attempt the methods of service in the order they are laid out in the statute.") It is essentially undisputed that these provisions were not strictly followed in this case. D.I. 14 at 2.

Petitioner's own filings – including both the Petition and the Motion for Default Judgment – establish conclusively that service was never completed under any tier of § 1608(b). Petitioner acknowledges that the Venezuelan Central Authority "refused delivery" under § 1608(b)(2). D.I. 18 ¶ 2; D.I. 19 ¶ 6. Petitioner then sought Letters Rogatory under § 1608(b)(3), but the Department of State itself expressly disclaimed that its actions constituted proper service, cautioning that "performance by the Department of State of its statutory functions under 28 U.S.C. § 1608 should not be construed as an indication … whether service was properly effected." D.I. 14. The Department further disclosed that it could not serve the Letters Rogatory in Venezuela "[b]ecause the United States Embassy operations in Venezuela are currently suspended." *Id.*

With respect to Bariven, service must be made upon it in accordance with an applicable international convention on service of judicial documents. Fed.R.Civ.P. 4(h)(2) and (f)(1). Both the United States and Venezuela are contracting states to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ("Hague Convention"). *See A.T.N. Indus., Inc. v. Gross,* No. 4:14-CV-02743, 2016 WL 362309, at *4 (S.D. Tex. Jan. 29, 2016). The Hague Convention provides "the exclusive means of valid service" for entities in countries that are signatories to it. *Volkswagenwerk*

12

*Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 706 (1988). Accordingly, the Hague Convention applies, and its procedures are mandatory and preempt inconsistent methods of service.

Bariven is not an "agency or instrumentality" of Venezuela (as Petitioner erroneously alleges) but Rule 4(f)(1) still requires serving Bariven – a foreign entity – in accordance with an internationally agreed upon means of service which, in this case, is the Hague Convention. *Id.* Petitioner, however, failed to effect service in accordance with the Hague Convention. For service under the Hague Convention's provisions to be complete, the documents must be served under Article 5, and the Venezuelan Central Authority must provide a certificate evidencing such service as required under Article 6. *See, e.g., Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017) (outlining that completed service requires the Central Authority "must serve the documents or arrange for their service, Art. 5, and then provide a certificate of service, Art. 6"); *Saint-Gobain Perf. Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F. 4th 1036, 1041-42 (D.C. Cir. 2022) (holding merely requesting service from the Venezuelan Central Authority does not suffice).

No affidavit appears anywhere in the record confirming that service was effected upon the Venezuelan Central Authority. There is no evidence that the Presidential Commissioner transmitted the documents to Venezuelan judicial authorities, that Venezuelan judicial authorities served the documents on Respondents, or that Respondents ever actually received the petition.[3]

---

[3] Given the timing of events, it is no wonder Respondents did not actually receive the Petition: in December of 2025 the State Department supposedly "delivered" the Letters Rogatory to the "Presidential Commissioner for Foreign Relations of the Bolivarian Republic of Venezuela in Washington, D.C." D.I. 14. However, that "position" was created by the government in exile of Juan Guaidó in 2019. In January 2023, the Venezuelan opposition voted to formally dissolve Guaidó's interim government. *See* Washington Post, "Venezuela's opposition dissolves Guaidó-led 'interim government,'" published December 29, 2022, updated December 30, 2022 (https://www.washingtonpost.com/world/2022/12/29/guaido-venezuela-opposition-ouster/). Following this dissolution, the Venezuelan embassy and all associated consulates in the United States were closed, and the roles established by the interim administration—including the "Presidential Commissioner for Foreign Relations"—were abolished. It is not clear who, if anyone,

Thus, Asia Genius never completed service as to either PDVSA or Bariven under the strict requirements of the Hague Convention. *See Strabal v. Zhang*, 318 F.R.D. 81, 114-115 (N.D. Ill. 2016) (collecting cases in which a plaintiff attempted service via other means where central authority failed to return a certificate of service).

Without proper service, the Court lacks personal jurisdiction over PDVSA or Bariven to enter a default final judgment against either entity. *See* 28 U.S.C. § 1330(b); *Gold Kist*, 756 F.2d at 19. And a judgment issued without personal jurisdiction and proper legal service is a legal nullity. *See Harrison*, 587 U.S. at 18-19 (2019) (reversing and remanding default judgment for plaintiff's failure to strictly comply with FSIA's service provisions against foreign state). The lack of proper service is a classic meritorious prima facie defense requiring vacatur of a default. *See Jackson v. FIE Corp.*, 302 F.3d 515, 528–29 (5th Cir. 2002) (holding a default judgment entered without proper service is void) (abrogated on other grounds by *Coney Island Auto Parts Unlimited, Inc. v. Burton Trustee for Vista-Pro Automotive, LLC*, 607 U.S. 155 (2026); *Lahr*, 2024 U.S. App. LEXIS 18170, at *9–10 (ordering vacatur of entry of default and default judgment where service was not properly made under the Hague Convention).

### e. Respondents Have Other Meritorious Defenses.

Respondents can assert other meritorious defenses, including venue and underlying defenses to the Award itself. Venue is improper under 28 U.S.C. § 1391(f)(3), as Bariven is not licensed to do business in Delaware, is not doing business in Delaware, and the action did not arise here. The only connection to Delaware is that PDVSA – a separate entity unconnected to the

---

was filling that post in December of 2025, but it was not someone in Venezuela. Then, in January of 2026 the United States arrested Maduro, and in March of 2026 the United States recognized a new head of state. Lack of actual notice is completely unsurprising in light of this sequence of events.

14

underlying arbitration and purchase orders – owns shares in a Delaware holding company which is unconnected to the instant dispute. That is insufficient for venue.

Respondents also have viable defenses under Article V of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. V, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. The requirements of Article V(1)(b) of the New York Convention were not satisfied. Every notification method for service of the arbitration failed: seven email addresses all failed; faxing failed; and the Dutch address for PDVSA Services was wrong. Award ¶¶ 15-26. The ICC deemed notification complete by constructive delivery to an address of an agent who had already moved. This was not notice; it was legal fiction. Moreover, as the Award itself recognized, there is a substantial question of whether the Arbitration Agreement itself was invalid under Venezuelan law, in violation of Article V(1)(a) the New York Convention. Under Venezuelan law, specifically Article 4 of the Venezuelan Commercial Arbitration Act, an arbitration agreement with a Venezuelan state-owned company is valid only if written authorization from the relevant government Minister was obtained. The Tribunal below explicitly acknowledged it "cannot ascertain definitively whether Bariven had the capacity to enter into the arbitration agreement." Award ¶ 138.[4] Again, this issue should be addressed on the merits.

## II.     Respondents' Failure to Respond Before Default Was Excusable

Under the third *Emcasco* factor, relief from a default judgment is appropriate where the record demonstrates that the defendant's failure to appear was attributable to excusable neglect rather than culpable conduct. *See Emcasco*, 834 F.2d at 73; *Farnese v. Bagnasco,* 687 F.2d 761,

---

[4] Two decisions of the District Court of The Hague — both involving Bariven under the identical Terms and Conditions — found that no valid arbitration agreement existed precisely because Bariven could not demonstrate ministerial authorization. Award ¶ 119.

15

764 (3d Cir. 1982). In the Third Circuit, a defendant's conduct is considered culpable only where "there is no explanation of the default inconsistent with a finding of willfulness or bad faith. *See Hritz v. Woma Corp.*, 732 F. 2d 1178, 1183 (3d Cir. 1984). The culpability inquiry asks whether the defendant "acted willfully, in bad faith, or with reckless disregard for the rules of procedure." *Id.* Here, no such showing can be made. Respondents' failure to respond was the product of an extraordinary convergence of circumstances – deficient notice, unprecedented political upheaval, contested legal authority over Venezuelan entities, and a catastrophic natural disaster – that made timely appearance impracticable through no fault of their own.

Respondents did not receive actual notice of the this case until entry of the Clerk's Default on April 22, 2026. Upon learning of the default, Respondents acted diligently to investigate the proceedings, retain counsel, and seek relief from this Court, especially when considered within the context of the age and relatively leisurely pace of this case prior to default.

A comparison of the parties' respective diligence is instructive. The underlying purchase orders date from 2012 to 2014. Petitioner did not file the arbitration requests until more than **five (5) years later**, in December 2019. D.I. 4-1 at p. 8. The Award issued March of 2023, yet Petitioner did not file this enforcement action until December 16, 2024, more than **twenty (20) months later.** D.I. 1. The Default Judgment issued on June 25, 2026, more than *two decades* after the underlying transactions, and this motion follows *less than two weeks thereafter*. D.I. 20. Against this backdrop, any suggestion that Respondents' brief delay constitutes culpable conduct is untenable*.*

The absence of timely actual notice also weighs heavily against any finding that Respondents deliberately ignored these proceedings. Nothing in the record suggests that Respondents knowingly elected not to participate after becoming aware of the Default Judgment. Rather, the record reflects that Respondents acted in good faith by seeking relief promptly after

16

learning that a default had been entered. *See  McCrae v. KLLM Inc.*, 89 F. App'x 361, 364 (3d Cir. 2004) (defining excusable neglect as "requiring a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules") (internal citation omitted).

Moreover, the totality of the circumstances surrounding Asia Genius's pursuit of the default judgment further demonstrate that Respondents' default was excusable. *See Collex, Inc. v. Walsh*, 74 F.R.D. 443 (E.D. Pa. 1977) (explaining that vacatur under Rule 60(b) must be considered under the totality of the circumstances). Counsel for Asia Genius was aware that PDVSA and Bariven had legal counsel representing their interests in other proceedings in this District yet there is no evidence that they contacted known counsel before seeking entry of default judgment. In addition, Respondents' Delaware counsel, after retention, attempted to meet and confer with Petitioner's counsel regarding vacatur of the default but Petitioner's counsel delayed responding meaningfully until the Default Judgment at D.I. 20 was entered. *See* Ex. "A" and "B". Although Asia Genius may not have been legally obligated to provide notice to known counsel or respond timely to Respondents' efforts to meet and confer, these factors are significant when assessing whether Respondents' nonappearance was the product of culpable conduct.[5]

The most critical factor for the Court to consider is the extraordinary political and legal upheaval occurring in Venezuela during the relevant period. The United States arrested Venezuelan leader Nicolás Maduro in Caracas, Venezuela, and detained him pending federal

---

[5] *See Heleasco Seventeen, Inc. v. Drake*, 102 F.R.D. 909 (D. Del. 1984) (vacating default judgment where defendants' attorney made telephone contacts with plaintiff's counsel indicating intent to defend and plaintiff failed to give required 3-day notice under Rule 55(b)(2)); *see also FROF, Inc. v. Harris*, 695 F. Supp. 827 (E.D. Pa. 1988) (vacating default judgment where defendant's attorney sent letter to plaintiff's attorney questioning service and plaintiff failed to provide Rule 55(b)(2) notice, finding excusable neglect under Rule 60(b)(1)).

criminal charges in the Southern District of New York. *See* U.S. Dep't of State, Nicolás Maduro Moros, https://www.state.gov/nicolas-maduro-moros (last visited June 30, 2026). This event triggered an immediate and profound disruption of Venezuela's operations, including the ability of state-owned entities such as PDVSA and Bariven to respond to legal process.

Following Maduro's arrest, the United States recognized Delcy Rodríguez as the new head of state of Venezuela on or before March 11, 2026. *See Stansell et al. v. FARC et al.*, Case No. 1:16-mc-00405-LGS-SN, ECF 621 (March 11, 2026, S.D.N.Y). Then, in May of 2026, following extensive litigation in multiple courts regarding which counsel had authority to represent the interests of Venezuelan entities (including Respondents), courts formally recognized undersigned counsel as having such authority. *See Stansell et al. v. FARC et al.*, Case No. 1:16-mc-00405-LGS-SN, ECF 632 (May 15, 2026, S.D.N.Y). Again, this had a profound impact on Respondents' ability to respond to litigation events in the United States.

Respondents' ability to respond was further impeded by two catastrophic earthquakes that struck Venezuela in late June 2026. The earthquakes caused widespread destruction of infrastructure, disrupted governmental and commercial operations, severed communications networks, and forced the suspension of ordinary institutional functioning for several weeks.[6] These earthquakes struck when Respondents' counsel was preparing this motion, physically preventing Respondents' personnel from coordinating with counsel and providing factual information important to prepare this filing. At least one district court within the Third Circuit has held that natural disasters constitute excusable neglect sufficient to warrant vacatur, absent any evidence of bad faith. *See Newland Moran Real Estate v. Green Cay Prop., Inc.*, 41 F. Supp. 2d 576 (D.V.I.

---

[6] See CNN, Live Updates: Venezuela Earthquake (June 29, 2026), https://www.cnn.com/2026/06/29/world/live-news/venezuela-earthquake-hnk.

1999) (vacating default judgment where hurricane disrupted defendant's ability to respond); *see also, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (determination of excusable neglect requires consideration of "all relevant circumstances surrounding the party's omission," including circumstances beyond the party's control).

Nothing in the record suggests that Respondents acted in bad faith or deliberately sought to evade these proceedings. Instead, the record reflects a combination of extraordinary external events, including delayed notice, Petitioner's choice to not contact known counsel or engage in meaningful meet and confers, unprecedented political instability and legal changes, and a catastrophic natural disaster. Viewed together, these circumstances establish that the default resulted from excusable neglect rather than culpable conduct.

### III. Lifting the Default Judgment Will Not Prejudice Petitioner

Under the first *Emcasco* factor, the Court must consider whether vacating the default would prejudice the plaintiff. *Emcasco*, 834 F.2d at 73. To establish prejudice, a plaintiff must demonstrate something more than mere delay; rather, prejudice requires a showing that vacatur would result in "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). No such prejudice exists here. The underlying arbitral Award – which Petitioner has held since March 2023 – is unaffected by vacatur. More than two decades have already passed since the underlying transactions. Petitioner has identified no witnesses who have become unavailable, no evidence that has been lost, and no change in circumstances that would impair its ability to prosecute its claim. Mere delay is not cognizable prejudice. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). Petitioner retains its right to prosecute its claims on the merits; the sole effect of vacatur is that Petitioner will be required to demonstrate compliance with

19

due process, jurisdictional requirements, and proper service – requirements that exist to protect fundamental fairness and that Petitioner has not yet satisfied.

### IV.    Default is an Extreme Sanction Not Warranted Here

The fourth *Emcasco* factor requires the Court to consider whether alternative sanctions less drastic than default are effective. *Emcasco*, 834 F.2d at 73. Default judgment is "an extreme sanction," not a procedural shortcut. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984). The Third Circuit has long recognized a strong preference for resolving disputes on the merits, *see Medunic v. Lederer*, 533 F.2d at 893–94 (3d Cir. 1976) particularly when the defaulting party acts promptly and presents substantial defenses, *see McCrae v. KLLM Inc.*, 89 F. App'x 361, 364 (3d Cir. 2004). Here, Respondents appeared promptly upon learning of the default, their counsel attempted to meet and confer with Petitioner's counsel, and they have now presented substantial jurisdictional and merits defenses. No purpose would be served by maintaining a default judgment of over $100 million against entities that did not timely receive actual notice of the proceedings. The interests of justice are served by vacatur and adjudication on the merits.

### CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court vacate the Default Judgment entered at D.I. 20 pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). The judgment is void for lack of jurisdiction and improper service under Rule 60(b)(4). Independently, all four *Emcasco* factors favor vacatur: Respondents possess multiple prima facie meritorious defenses; Petitioner will suffer no prejudice; Respondents' failure to respond resulted from excusable neglect; and the drastic sanction of default is inappropriate. This Court should vacate the default and proceed with an orderly determination of the substantive immunity, jurisdictional, service, and other merit-based defenses.

20

.                                   Respectfully,

**MARSHALL DENNEHEY, P.C.**

*/s/Aaron E. Moore*
Aaron E. Moore, Esq. (#6739)
1 Righter Parkway, Suite 301
Wilmington, DE 19803
T: (302) 552-4367
E: AEMoore@mdwcg.com

*Counsel for Respondents, Bariven, S.A., and Petróleos De Venezuela, S.A.*

*Stephen S. Stallings, Esq.\**
Florida Bar No. 958859
LEÓN COSGROVE JIMÉNEZ, LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Email:  sstallings@leoncosgrove.com
*\*Pro Hac Vice pending*

Dated: July 9, 2026

21